Phyllis F. KLENDER, William B. Rase, Roger J. Petri, and all similarly-situated individuals, Plaintiffs,

v.

UNITED STATES of America, Defendant.

No. 02–10082–BC.

United States District Court, E.D. Michigan, Northern Division.

June 18, 2003.

Jeffrey L. Nyquist, East Lansing, MI, Suzanne K. Clark, Southfield, MI, for plaintiff.

Thomas P. Cole, Washington, DC, for defendant.

### ORDER GRANTING PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

LAWSON, District Judge.

The plaintiffs, retired public school teachers residing in Michigan's Arenac, Gratiot, and Roscommon Counties filed this action seeking refunds from the Internal Revenue Service (IRS) for funds they claim were wrongfully withheld under the Federal Income Contribution Act (FICA). They have also filed a Motion for Class Certification, which is opposed by the United States. On August 29, 2002, the Court stayed the motion and ordered supplemental briefs on the question of whether the statute of limitations would be tolled as to putative class members while the class certification motion was pending. The briefs were filed and have been reviewed, and the motion is ready for decision. The Court determines that the matter should proceed as a class action and the class, defined below, will be certified pursuant to Federal Rule of Civil Procedure 23(b)(3).

### I.

As previously mentioned, the named plaintiffs are retired public school teachers. As part of their retirement arrangement with their respective school districts, the plaintiffs each received a payment of money from the school districts in exchange for their property rights of tenure and the contractual right to just cause employment. The plaintiffs contend that the payment they received did not constitute wages under FICA and thus withholding by the IRS based on those payments was improper.

The plaintiffs filed a claim for a refund on a proper form with the IRS in Cincinnati, Ohio, between August 29, 2001 and October 15, 2001. Klender requested $120.90; Rase requested $2,295.00; and Petri requested $2,142.00. Between October 23, 2001 and January 23, 2002, the IRS denied each of the plaintiffs' claims for a refund.

The plaintiffs filed this case on March 27, 2002 on behalf of themselves and other similarly-situated plaintiffs. By June 25, 2002, the plaintiffs had identified 151 individuals who received similar payments as part of their separation from their school districts totaling $174,170.59, from which the IRS withheld taxes as if the payments were wages, and had their IRS refund claims denied.

On May 31, 2002, the plaintiffs' filed a motion for class certification and on August 29, 2002 this Court held a hearing on the motion. During the hearing, the parties discussed the option of proceeding under a stipulated case management agreement in lieu of a class action lawsuit. The Court, therefore,

entered an order on August 30, 2002 staying the motion for class certification and required the parties to file by September 20, 2002 a joint agreement on how the case will be managed.

On September 20, 2002, the United States filed a statement outlining the parties' disagreement with the proposed management order. The plaintiffs also sent the Court a letter on the same date discussing the nature of the parties' disagreement and requested that this Court hold a conference and act as a facilitator to resolve the conflict. The plaintiffs, in their letter to the Court, explained that they seek an agreement that would allow the claims of additional plaintiffs, who would be named in an amended complaint, to relate back to March 27, 2002, the date the lawsuit was filed, for statute of limitations purposes. The government objected to this proposal.

The Court, pursuant to the plaintiffs' request, conducted a telephone conference with the parties through their respective counsel on October 10, 2002. At the conference, the Court decided to proceed with the motion on class certification and directed the parties to submit supplemental briefs discussing the statute of limitations issue and the ability of this Court to order an amended pleading to relate back to the date of the original pleading. Both parties filed supplemental briefs, and the matter is now ready for decision.

## II.

A matter may proceed as a class action only in accordance with Federal Rule of Civil Procedure 23. *In re Amer. Medical Sys., Inc.*, 75 F.3d 1069, 1079 (6th Cir.1996); *Shipp v. Memphis Area Office, Tenn. Dept. of Employment Sec.*, 581 F.2d 1167, 1170–71 (6th Cir.1978).

According to Fed.R.Civ.P. 23, a matter may proceed as a class action in the name of representative parties if (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law and fact common to the class; (3) the claims and defenses of the representative parties are typical of the claims and defenses of the class; and (4) the representative parties will fairly and adequately pro-

tect the interests of the class. Fed. R.Civ.P. 23(a). A class must meet all of the above prerequisites plus one of those listed in Fed.R.Civ.P. 23(b) to be certified. *Sprague v. General Motors Corp.*, 133 F.3d 388, 397 (6th Cir.1998).

*Olden v. LaFarge Corp.*, 203 F.R.D. 254, 268 (E.D.Mich.2001). The requirements of Rule 23(a) are commonly referred to as numerosity, commonality, typicality, and adequate representation. *Ibid.*

Rule 23(b) lists three other, alternative requirements. A class action under 23(b)(1) "is concerned with the risk that separate adjudications by or against individual members of a class would have on the putative parties to the class action." 5 Moore's Federal Practice, § 23.40[1] (Matthew Bender 3d ed.). A class action under 23(b)(2) "may be maintained if the party opposing the class has acted or refused to act on grounds generally applicable to the class, making final injunctive relief or corresponding declaratory relief with respect to the class as a whole appropriate." *Ibid.* A class action under 23(b)(3) "applies if the court finds that questions of law or fact common to the members of a class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." *Ibid.*

The first prerequisite for class certification, as defined in Rule 23(a)(1), is numerosity. There is no strict numerical test to determine when putative class members are too numerous to be joined as individual plaintiffs. *Bremiller v. Cleveland Psychiatric Institute*, 195 F.R.D. 1, 19 (N.D.Ohio 2000). The Court may consider several factors, including "class size, ease of identification of members of the proposed class, geographic distribution of class members, and the ability of the class members to pursue individual actions." *Krieger v. Gast*, 197 F.R.D. 310, 314 (W.D.Mich.2000). "The numerosity requirement is met when plaintiffs demonstrate that the number of potential class members is large, even if plaintiffs do not know the exact figure." *In re Consumers Power Co. Sec. Litig.*, 105 F.R.D. 583, 601

(E.D.Mich.1985). However, "[w]here the exact size of the class is unknown but general knowledge and common sense indicate that it is large, the numerosity requirement is satisfied." *Orantes–Hernandez v. Smith,* 541 F.Supp. 351, 370 (C.D.Cal.1982).

■ As of June 25, 2002, the plaintiffs have identified at least 151 individuals who filed claims with the IRS for refunds of amounts withheld from their early retirement buy-out payments and had their claims denied. They state that "[w]e are also aware of hundreds of other individuals throughout the state that are similarly situated." Pls.' Br. in Supp. of Mot. for Class Cert., at 5.

The government argues that the class is not too numerous to join, citing *Abbott v. United States,* 76 F.Supp.2d 236 (N.D.N.Y. 1999), in which the court held that 737 plaintiffs who sued for a determination of the tax treatment of payments in an early retirement package were not too numerous to join. However, the *Abbott* decision did not deal with issues of class certification, nor does the opinion disclose whether class certification was ever requested. Rather, the decision describes the method of case management adopted by that court.

> There are 737 named plaintiffs in this action, and that number was expected to increase to over 800. Thus, in order to streamline the discovery phase of this action, the parties agreed to and the undersigned, in the prior capacity of magistrate judge, ordered that plaintiffs designate one representative plaintiff .... Complete discovery was then to be permitted as to the representative plaintiff.
>
> Additionally, plaintiffs were required to stipulate that if the defendant was ultimately successful on a motion dispositive of liability as against the representative plaintiff, all plaintiffs in the action agreed to withdraw the complaint in its entirety, with prejudice. On the other hand, if the plaintiffs were successful on a motion dispositive of liability with regard to the representative plaintiff, including appeals, the parties would be permitted complete discovery as to all plaintiffs.

*Id.* at 238.

Although the *Abbott* group of plaintiffs was not a certified class, the *Abbott* court managed the case like a class action and designated a representative plaintiff. On the question of numerosity, the Court views the *Abbott* decision cited by the United States as supporting a finding that when the number of plaintiffs is such that a representative is required to manage the orderly progress of the lawsuit, the numerosity requirement has been satisfied. The Court so finds in the present action.

■ Rule 23(a) also requires a showing of commonality and typicality. Commonality means "there are questions of law or fact common to the class." Fed.R.Civ.P. 23(a). Typicality requires a sufficient nexus "between the injury to the named plaintiff and the conduct affecting the class, so that the court may properly attribute a collective nature to the challenged conduct." *Olden,* 203 F.R.D. at 269 (citing *Stout v. J.D. Byrider,* 228 F.3d 709, 717 (6th Cir.2000)). In this Circuit, the requirements of commonality and typicality overlap, since "[b]oth serve as guideposts for determining whether under the particular circumstances maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *Rutherford v. City of Cleveland,* 137 F.3d 905, 909 (6th Cir.1998) (quoting *General Tel. Co. of the Southwest v. Falcon,* 457 U.S. 147, 157 n. 3, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982)). Both issues will therefore be addressed under the heading of typicality. *Olden,* 203 F.R.D. at 269.

■ A variance in damages does not destroy commonality or typicality provided that "the same event or practice or course of conduct [ ] gives rise to the claims of other class members," and if the named representatives' claims "are based on the same legal theory." *Id.* (citing *Amer. Med. Sys.,* 75 F.3d at 1082). Although the named plaintiffs' claims must fairly encompass the class members' claims, they need not always involve the same facts or law provided there is a common element of fact or law. *Senter v. General Motors Corp.* 532 F.2d 511, 525 n. 31

(6th Cir.1976). In addition, the resolution of the common issue should advance the litigation. *Sprague*, 133 F.3d at 398.

■ In the present case, the plaintiffs describe the common question of law as follows: "whether a payment received in exchange for a property right or a right to contractual just cause pursuant to an Early Retirement Incentive Plan constitutes wages for purposes of Federal Insurance Contribution Act (FICA)." Pls.' Br. in Supp. of Mot. for Class Cert., at 6. The government contends that "both the factual and legal analyses to be applied to each proposed plaintiff herein will be subject to individual scrutiny. Factually, even if precedent established that FICA taxes should not have been paid on the employer payments, for each plaintiff to claim a refund for recovery of excess FICA paid, the plaintiff would have to establish a number of additional facts in order to establish the amount of the overpayment." Def.'s Resp. in Opp. to Mot. for Class Cert., at 5.

■ The government also raises the issue of sovereign immunity, not suggesting that the Court lacks jurisdiction over the claims of the named plaintiffs, but rather arguing that a "class action for a tax refund claim cannot be maintained where 'there is no showing that any of the other members of the purported class filed the requisite demands for refund.'" Def.'s Br. in Opp. of Mot. for Class Cert., at 3–4 (quoting *Heisler v. United States*, 463 F.2d 375, 375 (9th Cir.1972)). With their reply brief, the plaintiffs filed an affidavit stating that for the 151 individuals identified as potential class members, the affiant "personally examined a copy of the claim for a refund for FICA taxes that was filed by each individual and a copy of a denial letter from the IRS, denying each individual's claim for a refund." Pls.' Reply Br., Ex. A. The government's concern, although it may require some investigation to determine whether a person actually filed an IRS claim which was denied, can be handled through a precise definition of the class.

■ The final issue, adequacy of representation, inquires into the sufficiency both of the named class representatives and class counsel. *Olden*, 203 F.R.D. at 270. The inquiry into the fitness of the named representatives considers both the possibility of a conflict of interest and the ability of the representative to withstand the rigors of suit. *Amer. Med. Sys.*, 75 F.3d at 1083. In appointing class counsel, the Court determines whether counsel are "qualified, experienced and generally able to conduct the litigation." *Olden*, 203 F.R.D. at 270 (citing *Stout v. J.D. Byrider*, 228 F.3d 709, 717 (6th Cir.2000)). The absence of a conflict of interest and the adequacy of counsel do not, by themselves, give rise to a presumption that the named plaintiffs will properly represent the class. *Berger v. Compaq Computer Corp.*, 257 F.3d 475, 481 (5th Cir.2001). Rather, the court must determine whether the class members have interests that are antagonistic to the other class members. *Stout*, 228 F.3d at 717.

■ The mere existence of individualized defenses does not bar class certification. Class certification is appropriate as long as the defenses do not "overshadow the primary claims" of the litigation. *Daniels v. City of New York*, 198 F.R.D. 409, 419 (S.D.N.Y. 2001). If the defenses are atypical or likely to cause prejudice to the other class members, class certification may be inappropriate. *Ibid.* However, if they are merely ancillary they may be dealt with as part of the class action. *Ibid.* In this case, the likely defense is that the claims were properly denied. Therefore, the defense is not atypical nor is it likely to cause prejudice among the class members.

■ The plaintiffs have attached the résumés for their attorneys. Both attorneys have experience in employment law and have been practicing for at least ten years. Attorney Suzanne Clark states that she has tax law experience which includes wage/FICA issues. Neither résumé indicates any representation in class action lawsuits. However, the interests of the named plaintiffs are the same as the putative class members. The Court concludes that the requirements of Rule 23(a) are all easily met in this case.

■ Rule 23(b) condones two basic types of class actions. Mandatory classes, described by subsections (b)(1) and (b)(2), are designed for classes with homogenous inter-

ests and do not require the Court to provide class members with notice and an opportunity to opt out of the class. *Coleman v. Gen. Motors Acceptance Corp.*, 296 F.3d 443, 447 (6th Cir.2002). Subsection (b)(3), however, is an "opt-out" class provision because all class members are required to receive notice and "the opportunity to decline to participate in the action." *Id.* at 448. Class members are given more options in (b)(3) class actions because they are assumed to have heterogenous interests. *Ibid.* Close scrutiny is required of any attempt to impose a mandatory class upon persons entitled to money damages. *Ibid.* Nonetheless, the Sixth Circuit has held that when the Court has a choice between a(b)(1) and a(b)(3) class action, the Court should favor the former to "avoid the inconsistent adjudication or compromise of class interests that might otherwise occur." *First Fed. of Mich. v. Barrow*, 878 F.2d 912, 919 (6th Cir.1989) (citing *Robertson v. National Basketball Assoc.*, 556 F.2d 682, 685 (2d Cir.1977)).

Rule 23(b)(1) provides that

(1) the prosecution of separate actions by or against individual members of the class would create a risk of

    (A) inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class, or

    (B) adjudications with respect to individual members of the class which would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests.

Fed.R.Civ.P. 23(b)(1). The government states that a ruling by the United States Court of Appeals for the Sixth Circuit would be binding on all similarly-situated persons in the Sixth Circuit. However, the plaintiffs point to the IRS policy dealing with a similar issue in the Eighth Circuit, where the United States has agreed to follow an Eighth Circuit case only in similar cases within that circuit. *See North Dakota State Univ. v. United States*, 255 F.3d 599 (8th Cir.2001). The letter denying the plaintiffs' claims in this case states that "North Dakota v U.S. is currently only being followed in the 8th circuit and is being applied there only to employees who are tenured college professors." Compl., Ex. A.

■ The Court is confident that the government would establish policy consistent with the clear statements of the appellate court in this circuit; however there is no guarantee that the claims of the individual plaintiffs will reach the appellate court. Moreover, although *stare decisis* is an indispensable tenet of appellate jurisprudence, even to the point that adherence to this rule measures the quality and disregard of it reveals the dysfunctionality of an appellate court, it has never been a functional substitute for class actions. The prosecution of individual lawsuits could result in inconsistent treatment of similarly situated individuals. The Court finds, however, that Rule 23(b)(1) provides an improper basis for certification because the complaint seeks only compensatory relief. A class cannot be certified under Rule 23(b)(1)(A) if purely monetary, as opposed to declaratory or injunctive relief, is sought. *See In re Dennis Greenman Sec. Litigation*, 829 F.2d 1539, 1545 (11th Cir.1987); *Bacon v. Honda of Am. Mfg., Inc.*, 205 F.R.D. 466, 483 (S.D.Ohio 2001). A suit seeking monetary damages can, in some circumstances, be certified under Rule 23(b)(1)(B) if there is a limited fund from which claims can be paid. *See Bacon*, 205 F.R.D. at 483. This suit, however, is against the United States government, not a bankrupt corporation. The Court concludes that this suit is not certifiable pursuant to either subdivision of Rule 23(b)(1).

Neither party has urged Rule 23(b)(2) as a basis for class certification.

Rule 23(b)(3) states that class certification is appropriate if

[t]he court finds that the questions of law or fact common to the members of the class predominate over any questions effecting only individual members, and that a class action is superior to other available methods to the fair and efficient adjudication of the controversy.

Fed.R.Civ.P. 23(b)(3). Certification under subsection (b)(3) is available "not solely as a means for assuring legal assistance under vindication of small claims but, rather, to achieve the common use of time, effort and expense." *Am. Med. Sys.*, 75 F.3d at 1084.

The plaintiffs state that there is a single, common legal issue involved among the putative class members, and it is desirable to concentrate the litigation in a particular forum for the efficient administration of justice. The government argues that the same judge and lawyers could decide the case even if a class is not certified. It also questions why the case was filed in Bay City, instead of Detroit, Ann Arbor, or Lansing. The government appears to be concerned with having "all their eggs in one basket." Absent class certification, a decision by the district court against the IRS would not be binding in other cases. A decision in favor of the IRS, though not binding, would probably be very persuasive. The Court believes that deciding the single, common legal issue for a certified class would be superior to other methods of adjudicating the claims that appear to affect a large number of taxpayers. Therefore, a class certified under 23(b)(3) would be appropriate.

Finally, there is a "manageability" factor that "encompass[es] the whole range of practical problems that may render the class action format inappropriate for a particular suit." *Andrews v. Am. Tel. & Tel.*, 95 F.3d 1014, 1023 (11th Cir.1996)(internal quotations omitted). The problems may include cases which "break[ ] down into an unmanageable variety of individual legal and factual issues." *Ibid.* However, the Court can meet these challenges by bifurcating the question of law and the questions of fact. *Cf. Little Caesar Enterprises, Inc. v. Smith*, 172 F.R.D. 236, 267 (E.D.Mich.1997) (noting that a court can bifurcate the issues of liability and damages). Once the common legal issue is decided, individual assessments can be determined by a special master or by other methods. *Ibid.* This case does not present an unmanageable variety of individual legal and factual issues.

## III.

The Court finds that the requirements of Rule 23 have been met and that this is an appropriate case for class certification. Accordingly, it is **ORDERED** that the plaintiffs' motion for class certification [dkt # 4] is **GRANTED.**

It is further **ORDERED** that pursuant to Federal Rule of Civil Procedure 23(b)(3), the following class is certified in this cause:

> all individuals a) formerly employed by public school districts; b) residing in the Eastern District of Michigan from at least January 2000; c) who received from the school district a payment in exchange for a property right or the right to continued employment absent just cause for termination, pursuant to an Early Retirement Incentive Plan; d) who applied to the Internal Revenue Service in the year 2001 or thereafter for a refund of the portion of said payment that was withheld as taxes and other payroll deductions as if from wages pursuant to the Federal Insurance Contribution Act; and e) whose refund was refused by the Internal Revenue Service.

It is further **ORDERED** that counsel of record for the named plaintiffs in this matter, namely Suzanne Krumholz Clark, Esquire and Jeffrey L. Nyquist, Esquire, shall be appointed counsel for the designated class.

It is further **ORDERED** that the plaintiffs shall, at their expense, provide appropriate notice to all class members via first-class mail and in conformance with the requirements of Rule 23 of the Federal Rules of Civil Procedure. The notice shall provide putative class members until **September 2, 2003** to notify the counsel for the parties and the Court of their intent to opt out of the proposed class. The notice shall also provide that class members wishing to enter their own appearance in the matter through counsel shall do so by that same date.

It is further **ORDERED** that the parties shall confer and forward to the Court on or before **June 25, 2003** an agreed document that will be used to serve notice upon all members of the class. If the parties are unable to agree on the proper text for said notice, the parties shall forward the plaintiffs' proposed text along with a detailed list of

objections from the defendant. The notice shall not be sent until Court approval is given.

It is further **ORDERED** that the parties appear for a Case Management and Scheduling Conference on **Tuesday, July 1, 2003 at 9:30 a.m.**