785 F.2d 557
 Marcel JANAN, as surviving parent and next of kin of Paul
Janan, deceased, George Janan, Ray Janan and
Brenda Janan, Plaintiffs-Appellants
v.
Nevin C. TRAMMELL, Charles Traughber, Mary Walker, Linda K.
Miller, James E. Hoover, Michael Bradley and Jerry
McClain, Defendants-Appellees.
 No. 85-5385.
 United States Court of Appeals, Sixth Circuit.
 Argued Feb. 11, 1986.
Decided March 11, 1986.
 
 Chobee Ebbetts, Smalbein, Eubank, Johnson, Rosier and Bussey, Daytona Beach, Fla., Francis Carroll (argued), for plaintiffs-appellants.
 Robert B. Littleton, Littleton, Weed, Hubbard & Seaman, Alfred H. Knight (argued), Nashville, Tenn., for defendants-appellees.
 C. Edward Fowlkes, Nashville, Tenn., for McClain.
 Before KEITH and MARTIN, Circuit Judges, and RUBIN,* Chief District Judge.
 BOYCE F. MARTIN, Jr., Circuit Judge.
 
 
 1
 The plaintiffs, Marcel Janan and her children, Ray, George and Brenda Janan, appeal the district court's dismissal of their action brought under 42 U.S.C. Secs. 1983 and 1985. The Janans claim that the defendants, who were members of the Tennessee State Parole Board, Director of Paroles Michael Bradley, and Regional Parole Director Jerry McClain, were grossly negligent when they paroled Stanley Scruggs on April 14, 1983, and that the defendants' negligence deprived Paul Janan, the son and brother of the plaintiffs, of his life without due process of law as protected by the fourteenth amendment. Scruggs shot and killed Janan in Florida less than two months later on June 4.
 
 
 2
 The district court dismissed the action under Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim upon which relief may be granted. The district court held that the Janans failed to state a claim under the federal statutes because, under Martinez v. California, 444 U.S. 277, 100 S.Ct. 553, 62 L.Ed.2d 481 (1980), the death of Janan by the hand of Scruggs was too remote from the actions of the defendants to state a constitutional deprivation. Alternatively, the district court dismissed the parole board defendants by finding them absolutely immune. Because we hold that the defendants' actions were causally remote from Janan's death, we affirm on this ground and do not reach the issue of absolute immunity.
 
 
 3
 In evaluating the propriety of a dismissal under Rule 12(b)(6), the factual allegations in the complaint must be treated as true. Walker Process Equip., Inc. v. Food Mach. & Chem. Corp., 382 U.S. 172, 174-75, 86 S.Ct. 347, 348-49, 15 L.Ed.2d 247 (1965); Windsor v. The Tennessean, 719 F.2d 155, 158 (6th Cir.1983), cert. denied, --- U.S. ----, 105 S.Ct. 105, 83 L.Ed.2d 50 (1984). To withstand a challenge under 12(b)(6), it must be established beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. Conley v. Gibson, 355 U.S. 41, 45-46, 78 S.Ct. 99, 101-02, 2 L.Ed.2d 80 (1957). Windsor, 719 F.2d at 158.
 
 
 4
 The Janans' complaint alleges that on February 26, 1976, Scruggs was sentenced by a Tennessee state court to a term of ten years for armed robbery. He was first paroled on October 8, 1980. Ten days later, Scruggs robbed a store. On this offense, Scruggs was found guilty of grand larceny and was sentenced to a new three-year term. On April 14, 1983, Scruggs was again paroled. The Janans claim that two weeks later, a police officer told defendant McClain that Scruggs had made threats upon a police officer's wife and was therefore in violation of his parole and that he also had violated his parole by failing to report to McClain. According to complaint, no effort was made to apprehend Scruggs. On June 9, 1983, while in the company of a Tennessee prison escapee, Scruggs travelled to Florida and, apparently without provocation, killed Janan.
 
 
 5
 The Janans claim that the release of Scruggs in April of 1983 was "an act of gross negligence" because it was not in accordance with Tennessee Code section 40-28-123(a). That section provides in pertinent part:
 
 
 6
 If any prisoner be convicted in this state of a felony, committed while on parole from a state prison or workhouse, he shall serve the remainder of his sentence, under which he was paroled, or such part of that sentence, as the board may determine before he commences serving the sentence affixed while on parole.
 
 
 7
 Because the Tennessee statute did not require that Scruggs be released and because Scruggs served no additional prison time on his ten-year sentence nor did he serve the complete three-year sentence, there is at least an argument that under these facts the release might have been negligent or even grossly negligent.
 
 
 8
 The Supreme Court has recently addressed the issue of negligence as a basis for section 1983 actions in Daniels v. Williams, --- U.S. ----, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986). The Court held that due process "is simply not implicated by a negligent act of an official causing unintended loss of or injury to life, liberty or property." Id., 106 S.Ct. at 663 (emphasis in original). However, the Court, in a footnote, stated that the case before them provided it "no occasion to consider whether something less than intentional conduct, such as recklessness or 'gross negligence,' is enough to trigger the protections of the Due Process Clause." Id. at 667 n. 3. In their complaint, the Janans have alleged "gross negligence." This action may very well be one intended to be controlled by Daniels. However, because we are reviewing a 12(b)(6) dismissal and because we hold that this action is precluded under Martinez, we decline to deal with the amorphous issues of where on the spectrum of degrees of negligence this case falls and whether that amount of negligence is sufficiently close to the "mere negligence" end of the spectrum so as to be precluded by Daniels.
 
 
 9
 Even if the actions of the defendants were improper, the Janans' claim does not establish a deprivation of Paul Janan's constitutional rights under 42 U.S.C. Sec. 1983. In Martinez on similar facts, the Supreme Court dealt with this issue. In Martinez, a fifteen-year-old girl was murdered by a parolee five months after his parole. The parolee, Thomas, had been convicted of rape and had been committed to a state mental institution as a "Mentally Disordered Sex Offender not amenable to treatment." Later, he was sentenced to one to twenty years in prison, with a recommendation that he not be paroled. Five years later, a parole board, knowing Thomas' nature, released him. The parole board did not observe all the "requisite formalities." Five months after his release, Thomas killed the plaintiff's daughter. The plaintiffs sought to hold the California parole officials liable under section 1983. The Martinez Court held that Thomas' release was state action but that act did not deprive the plaintiff's daughter of her life. Rather, the Court concluded:
 
 
 10
 Her life was taken by the parolee five months after his release. He was in no sense an agent of the parole board.... Further, the parole board was not aware that appellants' decedent, as distinguished from the public at large, faced any special danger.
 
 
 11
 444 U.S. at 285, 100 S.Ct. at 559 (footnote and citations omitted). The Court concluded that the death was "too remote a consequence of the parole officers' action to hold them responsible under the federal civil rights law." Id.
 
 
 12
 Clearly, Scruggs was not a state officer and could not be said to be acting under color of state law. See Jones v. Phyfer, 761 F.2d 642, 644 (11th Cir.1985). However, the Janans argue that Martinez is distinguishable because five months passed between the release and the murder whereas less than two months passed between Scruggs' release and Janan's murder. We do not believe that the Supreme Court intended to provide us with a due process timetable such that a five-month gap does not deprive one of due process rights while a two-month gap automatically does. We decline to place such weight on the temporal factor. Rather, the proper analysis is whether a special relationship exists between the criminal and the victim or between the victim and the state or whether there is some showing that the victim, as distinguished from the public at large, faces a special danger by the parolee's release. In so holding, we follow other circuits that have held that absent a special relationship between the criminal and the victim or the victim and the state, no due process violation can occur. Jones v. Phyfer, 761 F.2d 642 (11th Cir.1985); Fox v. Custis, 712 F.2d 84 (4th Cir.1983); Humann v. Wilson, 696 F.2d 783 (10th Cir.1983); Bowers v. DeVito, 686 F.2d 616 (7th Cir.1982).
 
 
 13
 As the Seventh Circuit stated in Bowers, "there is no constitutional right to be protected by the state against being murdered by criminals or madmen." Bowers, 686 F.2d at 618. In Bowers, a criminal, convicted or aggravated battery with a knife, was diagnosed as a "schizophrenic in remission." A year later he killed a woman with a knife and was found not guilty by reason of insanity. Five years later he was released and one year after that he killed another person. The court stated that there was no section 1983 action against the parole board unless they knew that the release placed a certain person in special danger. Id. at 618.
 
 
 14
 The Janans have in no way claimed that the parole board or McClain or Bradley had any specific responsibility to Paul Janan. Nor have they claimed that Janan was in some way related to Scruggs such that the defendants should have known that Scruggs release or his possible parole violation would endanger Janan. Janan was simply a member of the public at large. Therefore, the Janans have failed to establish the special relationship required to invoke the due process protection of the fourteenth amendment.
 
 
 15
 We affirm.
 
 
 
 *
 The Honorable Carl B. Rubin, Chief Judge, United States District Court for the Southern District of Ohio, sitting by designation