Shirley POSTELL–RUSSELL, Plaintiff,

v.

INMONT CORP., Defendant.

No. 88–CV–70572–DT.

United States District Court,
E.D. Michigan, S.D.

Aug. 11, 1988.

Samuel V. Thomas, Detroit, Mich., for plaintiff.

Donald A. Van Suilichem, Detroit, Mich., for defendant.

## MEMORANDUM OPINION AND ORDER

ZATKOFF, District Judge.

Plaintiff, a black female, brings this three-count complaint alleging in Count I employment discrimination in violation of the Michigan Elliott–Larsen Civil Rights Act, M.C.L. § 37.2101 *et seq.* Count II concludes that Defendant has committed certain state law tort claims. Count III

**2**

asserts a private right of action under M.C. L. § 750.352, a criminal statute.

Plaintiff commenced employment with Defendant on March 4, 1981, in the temporary position of a keypunch operator "A." She became a full-time employee in that position on June 24, 1981. Plaintiff alleges in Count I of the Complaint:

5. That commencing in September of 1983, and continuing to the present, Plaintiff has received less pay than similarly situated white employees for performing the same work.

6. That when Plaintiff has complained of her unfair treatment, she has been harassed or otherwise retaliated against.

7. That Defendant has followed and continues to follow policy and practice or custom of discriminating against employees on the basis of their race, black.

8. That as a result of Defendant's wrongful conduct, Plaintiff has suffered great injuries that have caused her pain, suffering, and mental anguish and that will in the future cause her pain, suffering and mental anguish, to wit; permanently, included but not limited to:

a. Loss of promotion and promotional opportunity with Defendant.

b. Loss of seniority at a higher pay rate with Defendant.

c. Loss of wages and earning potential, both in the past and in the future.

d. Extreme embarrassment, humiliation, inconveniences, extreme mental anguish, mental concern, and a loss of personal mental well-being.

It is not clear from the pleadings and briefs before the Court whether the Plaintiff is still employed by the Defendant.

Count II incorporates the factual allegations contained in Count I and concludes:

12. Defendant has engaged in torturous conduct toward Plaintiff, including the intentional infliction of emotional distress, interference with Plaintiff's contract of employment with Defendant, and interference with Plaintiff's advantageous business relationships, which has caused Plaintiff humiliation, a sense of outrage, indignity, mental anguish, mental concern, and a loss of personal mental solitude.

13. Defendant have [sic] acted maliciously, wantonly, reprehensibly, in bad faith, and with ill will toward Plaintiff, which has injured Plaintiff's mental solicitude and feelings and for which Plaintiff seeks exemplary damages.

14. As a result of the Defendant's torturous conduct, Plaintiff has suffered great injuries as set forth in Count I.

15. This Court has jurisdiction as a result of the injuries and damages sustained by Plaintiff, and the amount in controversy exceeds Ten Thousand and 00/100 ($10,000.00) Dollars, exclusive of interest and costs.

WHEREFORE, Plaintiff asks for judgment against Defendant, for whatever amount the Court or jury determines to be fair, just, and adequate compensation for the injuries and damages sustained by Plaintiff, and asks this Court to award Plaintiff her costs and attorney fees.

Currently before the Court is Defendant's motion to dismiss Counts II and III pursuant to Fed.R.Civ.P. 12(b)(6).[1] A motion to dismiss for failure to state a claim under Rule 12(b)(6) tests the legal sufficiency of the Plaintiff's Complaint. *Davey v. Tomlinson*, 627 F.Supp. 1458, 1463 (E.D. Mich.1986); *Hudson v. Johnson*, 619 F.Supp. 1539, 1542 (E.D.Mich.1985). "In evaluating the propriety of a dismissal under Rule 12(b)(6), the factual allegations in the complaint must be treated as true." *Janan v. Trammell*, 785 F.2d 557, 558 (6th

---

**1.** This motion was filed by Defendant and served upon Plaintiff on May 17, 1988. Pursuant to E.D.Mich. Local Court Rule 17(g), a response in opposition to a motion must be filed within 10 days after service of the motion. Computing this time period under the most liberal construction of Fed.R.Civ.P. 6(a) and (e), Plaintiff was required to set forth any opposition to this motion no later than June 6, 1988. As of July 27, 1988, Plaintiff has failed to respond.

Cir.1986); *Windsor v. The Tennessean,* 719 F.2d 155, 158 (6th Cir.1983), *cert. denied* 469 U.S. 826, 105 S.Ct. 105, 83 L.Ed.2d 50 (1984). Plaintiff's claims shall not be dismissed unless it is established that the Plaintiff cannot prove beyond doubt any set of facts to support its claim that would entitle Plaintiff to relief. *Janan,* 785 F.2d at 558.

Defendant argues that Count II must be dismissed because Plaintiff has failed to state a claim for intentional infliction of emotional distress.

To date, the Michigan Supreme Court has not incorporated into Michigan common law the tort of intentional infliction of emotional distress. In *Roberts v. Auto-Owners Ins. Co.,* 422 Mich. 594, 374 N.W.2d 905 (1985), the Michigan Supreme Court was faced with a claim of intentional infliction of emotional distress arising from a denial of an insurance claim. The *Roberts* Court identified four elements generally considered to be essential to a prima facie claim:

(1) extreme and outrageous conduct;

(2) intent or recklessness;

(3) causation; and

(4) severe emotional distress.

422 Mich. at 602. The *Roberts* Court concluded that since the plaintiff "failed even to meet the threshold requirements of proof to make a prima facie claim of intentional infliction of emotional distress, we are constrained from reaching the issue as to whether this modern tort should be formally adopted into our jurisprudence ..." 422 Mich. at 597.[2]

With respect to the first element, the *Roberts* Court quoted the Restatement

Torts, 2d, § 46, comment d, pp 72–73 to describe what constitutes extreme and outrageous conduct:

"The cases thus far decided have found liability only where the defendant's conduct has been extreme and outrageous. It has not been enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by 'malice', or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort. Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go. beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, 'Outrageous!' "

In *Khalifa v. Henry Ford Hospital,* 156 Mich.App. 485, 401 N.W.2d 884 (1986), plaintiff's claim of intentional infliction of emotional distress alleged that:

(1) [Defendant] humiliated plaintiff by insults about his heritage and on one occasion [Defendant] was purported to have said he thought Arabs are barbarians and 'you people are dumb and slow'; (2) [Defendant] threatened him with disciplinary reports so that he could not get another job; and (3) [Defendant] subjected him to professional humiliation by assigning him to the work which he refused and then discharged him.

---

**2.** This Court cannot create Michigan common law. Since the Michigan Supreme Court has not formally adopted the tort of intentional infliction of emotional distress, review of whether Plaintiff has alleged a prima facie case certainly seems to be an exercise in futility. However, the indecisiveness expressed by the Michigan Supreme Court in *Roberts* left the Michigan appellate courts unknowing as to whether the tort of intentional infliction of emotional distress may be maintained. See *e.g. Sankar v. Detroit Bd. of Ed.,* 160 Mich.App. 470, 409 N.W. 2d 213 (1987); *Bonelli v. Volkswagen,* 166 Mich. App. 483, 421 N.W.2d 213 (1988). Indeed, some

panels of the Michigan appellate courts have held that a tort claim for intentional infliction of emotional distress may be maintained. See *Margita v. Diamond Mtg. Corp.,* 159 Mich.App. 181, 406 N.W.2d 268 (1987); *Dickerson v. Nichols,* 161 Mich.App. 103, 409 N.W.2d 741 (1987).

As a result, this Court shall review the four prima facie elements as set forth by the Supreme Court in *Roberts* to determine whether Plaintiff has stated a claim for intentional infliction of emotional distress assuming, without deciding, that such a cause of action exists under Michigan law.

4

156 Mich.App. at 499, 401 N.W.2d 884. This conduct was found not to be so extreme and outrageous conduct as to sustain a claim of intentional infliction of emotional distress. The *Khalifa* court held: "[t]he Court of Appeals has on one occasion allowed tort liability for emotional distress, but only for outrageous conduct far more brutal than the conduct alleged by the plaintiff" 156 Mich. App. at 500, 401 N.W. 2d 884. (citations omitted).

In *Dickerson v. Nichols*, 161 Mich.App. 103, 409 N.W.2d 741 (1987), the appellate court defined what is meant by severe emotional distress (the fourth *Roberts* element) by referring to Comment j of the Restatement which states that emotional distress:

> includes all highly unpleasant mental reactions, such as fright, horror, grief, shame, humiliation, embarrassment, anger, chagrin, disappointment, worry, and nausea ... The law intervenes only where the distress inflicted is so severe that no reasonable [person] could be expected to endure it.

*Dickerson*, 161 Mich.App. 103, 409 N.W.2d 741 (1987).

■ Assuming without deciding that the tort of intentional infliction of emotional distress is a valid cause of action in Michigan, this Court finds that Plaintiff has failed to allege a prima facie claim.

Count II of Plaintiff's Complaint fails to allege any conduct, outrageous or otherwise, by the Defendant. Rather, Plaintiff alleges conclusions of law to support her claim. These conclusions are not sufficient to satisfy the pleading requirements of Fed.R.Civ.P. 8(a), which requires Plaintiff to allege facts sufficient to show that she is entitled to relief.

■ Incorporating the factual allegations contained in Count I, the Court still finds that Plaintiff has failed to allege facts sufficient to show that Defendant's conduct was extreme and outrageous. Plaintiff alleges a claim of disparate treatment discrimination. By definition disparate treatment discrimination does not incorporate intentional acts of discriminatory conduct. *Cf. Schipani v. Ford Motor Co.*, 102 Mich.App. 606, 302 N.W.2d 307 (1981).

Unlike intentional discrimination, where the affected person must prove that the discriminating party intentionally discriminated against the affected person because of that person's race, disparate treatment occurs where employers simply treat some people less favorably than others because of their race. Discriminatory motive, although critical to a claim of disparate treatment, may be inferred from a sufficient showing of disparity between members of the majority class and the affected class. A showing of actual discriminatory intent against the individual person is not necessary. Disparate treatment discrimination is, unfortunately, entrenched in our society. Allegations of disparate treatment discrimination do not infer conduct that is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency."

Plaintiff does allege that she was harassed and retaliated against however, Plaintiff does not provide the Court with any facts to support these claims. Without having the facts that support Plaintiff's allegations the Court simply cannot determine whether Defendant's conduct amounted to extreme and outrageous behavior.

■ Likewise, the Court finds that Plaintiff has failed to allege "severe emotional distress." As stated in *Dickerson v. Nichols, supra*, 161 Mich.App. at 103, 409 N.W.2d 741: "[t]he law intervenes only where the distress inflicted is so severe that no reasonable person could be expected to endure it." Applied in an employment setting, an employee must allege that the emotional distress was so severe that the employee was forced to abandon employment and that no reasonable person in like circumstances would have been able to endure the employment setting. No such allegation is made by Plaintiff. Indeed, the prayer for relief and damages requested make no reference to termination of employment or total loss of wages. The absence of such an allegation is conspicuous and leads the Court to believe that Plaintiff remained in the Defendant's employ at least until the date the Complaint was filed.

For the above stated reasons the Court finds that Plaintiff has failed to assert a prima facie case of intentional infliction of emotional distress.

Before dismissing Count II, however, Plaintiff's allegations of tortious interference must be addressed. Plaintiff alleges "Defendant has engaged in tortious conduct toward Plaintiff, including ... interference with Plaintiff's contract of employment with Defendant, and interference with Plaintiff's advantageous business relationships ..." Complaint ¶ 12.

The Michigan appellate courts have set forth the elements of tortious interference of an advantageous business relationship by relying upon 45 Am.Jur.2d, Interference, § 50, p. 322:

"The basic elements which establish a prima facie [showing of] tortious interference with a business relationship are the existence of a valid business relation (not necessarily evidenced by an enforceable contract) or expectancy; knowledge of the relationship or expectancy on the part of the interferer; an intentional interference inducing or causing a breach or termination of the relationship or expectancy; and resultant damage to the party whose relationship or expectancy has been disrupted. One is liable for commission of this tort who interferes with business relations of another, both existing and prospective, by inducing a third person not to enter into or continue a business relation with another or by preventing a third person from continuing a business relation with another."

See *e.g. Northern Plumbing & Heating, Inc., v. Henderson Bros., Inc.*, 83 Mich.

App. 84, 93, 268 N.W.2d 296 (1978), lv. den. 405 Mich. 845 (1979); *Trepel v. Pontiac Osteopathic Hospital*, 135 Mich.App. 361, 374, 354 N.W.2d 341 (1984), lv. den. 422 Mich. 853 (1985); *Woody v. Tamer*, 158 Mich.App. 764, 776–777, 405 N.W.2d 213 (1987).

The elements of the tort of interference with a contractual relationship are the same as the elements of interference with an advantageous business relationship except the former tort requires the existence of a valid contractual relationship, while under the latter tort, a contractual relationship is not necessary to state a cause of action. *Woody v. Tamer*, 158 Mich.App. at 776–777, 405 N.W.2d 213; *Bonelli v. Volkswagen of Am. Inc.*, 166 Mich.App. 483, 496–497 n. 4, 421 N.W.2d 213 (1988).

■ Most important to this case, both torts require the participation of a third party that is independant from the participants to the contract or business relation. As previously stated:

One is liable for commission of [these torts] who interferes with business relations of another *by inducing a third person not to enter into or continue a business relation with another or by preventing a third person from continuing a business relation with another.* (Emphasis added).

45 Am.Jur.2d, *supra.*[3] In the instant case, Plaintiff does not allege that Defendant induced a third person not to enter or continue a business relationship or contract with Plaintiff, nor does Plaintiff allege that the Defendant prevented a third party from continuing a business or contractual relationship with Plaintiff.[4] Under these

---

**3.** Some jurisdictions have held that employers cannot, as a matter of law, be subject to liability for interfering with their own relations with their employees. *See e.g. O'Neill v. ARA Services, Inc.*, 457 F.Supp. 182 (E.D.Pa.1978); *Manley v. Pandick Press, Inc.*, 72 App.Div.2d 452, 424 N.Y.S.2d 902 (1980). This rule does not prevent suits against agents of the employer whose course of actions and motives are not legally attributable to the employer because the agent is acting outside of the scope of his authority. In this situation the agent may be liable for interference. *Fletcher v. Wesley Medical Center*, 585 F.Supp. 1260, 1262 (D.Kan.1984).

**4.** Plaintiff must allege that Defendant either prevented a third party from taking action or induced a third party to take action that would detrimentally affect the Plaintiff. This distinction was addressed in *Woody v. Tamer*, 158 Mich.App. 764, 774–775, 405 N.W.2d 213 (1987). The *Woody* Court relied upon 4 Restatement Torts, § 766, Comment d, pp 54–55:

d. Induces or otherwise purposely causes. The word "induces" refers to the situations in which A causes B to choose one course of conduct rather than another. Whether A causes the choice by persuasion or by intimidation, B is free to choose the other course if

circumstances, the Court finds that Plaintiff has failed to state a claim for tortious interference of either a business or contract relationship.

For the above stated reasons, the Court hereby dismisses Count II of the Complaint since Plaintiff has failed to state a claim upon which relief may be granted.

Count III of Plaintiff's Complaint alleges that Defendant violated M.C.L. § 750.352, which states:

> Any person or persons who shall, by threats, intimidations, or otherwise and without authority of law, interfere with, or in any way molest, or attempt to interfere with, or in any way molest or disturb, without such authority, any person, in quiet and peaceable pursuit of his lawful occupation, vocation or avocation, or on the way to and from such occupation, vocation or avocation, or who shall aid or abet in any manner such unlawful acts, *shall be guilty of a misdemeanor.*

(Emphasis added).

■ This Section does not provide Plaintiff with a civil remedy. Plaintiff has not provided, nor has this Court found any case law that suggests that Plaintiff may maintain a private right of action under this statute. Therefore, Count III of Plaintiff's Complaint fails to state a claim upon which relief may be granted and must be dismissed.

## CONCLUSION

For the above stated reasons the Court hereby GRANTS Defendant's motion to dismiss Counts II and III for failure to state a claim pursuant to Fed.R.Civ.P. 12(b)(6).

IT IS SO ORDERED.

---

he is willing to suffer the consequences. Thus inducement operates on the mind of the person induced. The phrase "otherwise purposely causes" refers to the situations in which A leaves B no choice, as, for example, when A imprisons or commits such a battery upon B that he cannot perform his contract with C, or when A destroys the goods which B is about to deliver to C. Such is also the case when performance by B of his contract with C necessarily depends upon the prior performance by A of his contract with B and fails to perform in order to disable B from performing for C. The rule stated in this Section applies to any purposeful causation whether by inducement or otherwise. The essential thing is the purpose to cause the result. If the actor does not have this purpose, his conduct does not subject him to liability under this rule even if it has the unintended effect of deterring the third person from dealing with the other. It is not necessary, however, that the purpose to cause the breach of contract or failure to deal be the actor's sole or paramount purpose. It is sufficient that he designs this result whether because he desires it as an end in itself or because he regards it as a necessary, even if regrettable, means to some other end. . . .